RECEIVED
NOV 1 3 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Offshore Staffing Services of Acadiana LLC | Civil Action No. 11-2205 Lead<br>12-1866 Member |
| versus | Judge Richard T. Haik, Sr. |
| Farrell | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court is Offshore Staffing Services of Acadiana, LLC's ("OSSA"), Motion For Summary Judgment [Rec. Doc. 10], Garrett J. Farrell's, Memorandum in Opposition [Rec. Docs. 12 & 19] and OSSA's Reply thereto [Rec. Doc. 20].[1] For the following reasons, OSSA's motion will be granted.

*Background*

OSSA filed this declaratory judgment action on December 23, 2011, requesting that the Court find OSSA has no obligation to pay maintenance and cure to Garrett J. Farrell ("Farrell") for injuries he allegedly sustained on April 14, 2011, while working as a roustabout for OSSA on Seahawk Drilling's jack-up drilling rig, the Seahawk 3000. OSSA alleges that it received a letter from Farrell's attorney dated September 1, 2011 asserting that Farrell is entitled to payments of maintenance and cure based on the April 14, 2011 incident. *R 1, ¶ IV, Exh. A; R. 10-4, Exh. C.* Farrell's counsel also attached various medical records from April 14, 2011 through

---

[1] Farrell filed a motion for leave to file a Memorandum in Opposition on October 2, 2012, 18 days beyond the August 14, 2012 deadline. While the Court will grant the motion to allow Farrell to file his untimely opposition to OSSA's motion, the Court admonishes Farrell and his counsel to abide by the Court's Scheduling Order and the Federal Rules of Civil Procedure in the future. The Court will also grant OSSA's Motion for Leave to File a Reply to Farrell's opposition [Rec. Doc. 20].

September 1, 2011, asserting that the records support Farrell's entitlement to maintenance and cure for injuries allegedly sustained by him. *Id., at Exh.B; Exh. D.* On July 9, 2012, Farrell filed a lawsuit against OSSA for personal injuries he allegedly sustained in the April 14, 2011 incident. *12-cv-1866, R. 1, ¶ VIII.* Plaintiff contends he is no longer able to be gainfully employed as an offshore worker as a result of the alleged incident. *Id. at ¶ IX.* Plaintiff further contends that OSSA has failed to pay maintenance and cure and he is therefore entitled to punitive damages and attorney's fees. *Id. at ¶ X.* In its motion for summary judgment, OSSA argues that plaintiff's entitlement to maintenance and cure benefits is precluded by *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir.1968).[2]

*Analysis*

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel. *Id.* at 548. "A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987). An employer is allowed to rely on certain legal defenses to deny these claims. *McCorpen, at 549.* One such defense is that the injured seaman willfully concealed from his employer a preexisting medical condition. *Id.*" *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).

---

[2] OSSA notes that its argument as to the McCorpen defense under the Jones Act is solely for purposes of this motion for summary judgment. Otherwise, OSSA does not concede that Farrell is a "seaman" as defined by the Jones Act.

"In cases involving pre-existing conditions, courts distinguish between nondisclosure and concealment. If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition 'when in [the seaman's] own opinion the shipowner would consider it a matter of importance.' *McCorpen* at 548-49. If, however, the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits. *Id.* at 549. Concealment of one's condition will not preclude recovery of maintenance and cure under all circumstances. The concealment defense will only prevail if the vessel owner can show that: (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit. *Brown*, 410 F.3d at 171." *Jauch,* 470 F.3d at 212.

The first prong of the *McCorpen* defense requires the employer to prove by a preponderance of the evidence that the injured worker intentionally misrepresented or concealed medical facts. *Id.* As the Fifth Circuit has determined, "[t]he language of *McCorpen* lends itself to [an] objective interpretation of intentional concealment." *Brown*, 410 F.3d at 174 (citing *McCorpen*, 396 F.2d at 549). "*McCorpen's* intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination." *Id.* at 175. The remaining elements of the *McCorpen* defense, however, are not merely objective. The second element, whether the non-disclosed

3.

facts were material to the employer's decision to hire the claimant, requires that the employer's medical inquiry on the application in question was rationally related to the applicant's physical ability to perform his job duties. *Id.* As to the third element, the employer must meet its burden of establishing a causal connection between the withheld information (pre-existing injury) and the injury giving rise to the lawsuit. *Id.*

In support of its defense under *McCorpin,* OSSA cites the employment application and the Employee Medical History Questionnaire which plaintiff completed on or about April 7, 2011as a part of OSSA's hiring process, as well as plaintiff's medical records attached to its motion. *R.10, Exhs. E, F, G, H, I, J, K, L, M, N, O, P, R.*

<u>The Employee Medical History Questionnaire</u>

The Employee Medical History Questionnaire completed by Farrell stated the following:

> Pursuant to LA-RS 23:1208.1 the failure to answer truthfully any questions below, may result in a denial of any right you or your dependent(s) may have to worker's compensation benefits, including medical treatment and expenses.
>
> Do you have, or have you ever had any of the following medical conditions? If you answer yes to any of the questions below, please explain in detail in the remarks section or on the back of this page the nature of your injury or condition, the type of treatment received, and the name, address and phone number of the doctor providing treatment.

*Id.* The Questionnaire then asked the questions, "Have you ever had back trouble or injury to your back, head, or neck?," "Do you have any restrictions or limitations upon your physical activities?," "Have you ever had any operation, accidents, broken

4.

bones, strains or serious injuries?" and "Have you ever received treatment from a doctor chiropractor or therapist for your back, neck, knee, shoulder, wrist, ankle hip, arm or leg" *Id.* Plaintiff responded "NO" to each of these questions. *Id.*

Plaintiff's Post-Accident Medical Records

Farrell's medical records provide that immediately following the alleged incident on April 14, 2011, Farrell was examined by Dr. Francisco Silva at the request of OSSA. Dr. Silva indicated, "[Farrell] is complaining of pain on the left side of his lower back." Dr. Silva's assessment of Farrell's condition was "Acute lumbosacral strain and spasm." *R. 10, Exh. R.* Thereafter, on April 18, 2011, Farrell followed up with Dr. Ronald Segura of the Bone and Joint Clinic who was also treating Farrell prior to his employment with OSSA. As evidenced by the post-accident medical records of Dr. Ronald Segura, Farrell alleged injuries to his left knee, hip, right foot, and complains of back/lumbar pain in the lower and mid regions in addition to numbness on the left side of his body. At the request of Dr. Segura, An MRI was conducted on Farrell on July 20, 2011. The MRI revealed circumferential disc bulging at L3-4, circumferential disc bulging at L4-5, and a mild broad-based dorsal disc bulge at L5-S1. *Id. at Exh. P.*

Plaintiff's Pre-Accident Medical Records

The medical records reflecting Farrell's medical history prior to the alleged accident provide as follows:

On May 5, 2006, Farrell was examined by Dr. Mark Walker of the Houma Family Practice Clinic. Dr. Walker's records indicate, "[p]atient stated he was on the

5.

basket of a crane, he came down hard due to spool being tangled, has pain in lower back and dizzy." He was diagnosed with a lumbar strain. *R. 10, Exh. E.*

On April 7, 2008, Farrell was examined by Dr. Brian Bourgeois of Westbank Industrial Medicine. Dr. Bourgeois's records indicate that he was injured while working as a rigger when "he was picking up a pipe and hurt lower back . . . [complains of] pain in SI joint and thigh (anterior and posterior)." Farrell was diagnosed with a lumbar strain. *Id. at Exh. F.* Thereafter, on April 9, 2008, Farrell was treated by Dr. Scott Habetz, Orthopedist, of the Bone & Joint Clinic in Marrero for acute onset of pain in his mid lumbar area and left elbow related to the same injury. *Id. at Exh. H.* On April 21, 2008, an MRI was conducted on Farrell which revealed left lateral disk bulging at L3-4, broad based disk bulging with mild disk protrusion at L4-5, and a mild central disk protrusion at L5-S1. The MRI "impression" indicates, "degenerative changes of the lower lumbar spine. There is mild narrowing of the left exit foramen at L4-5." *Id. at Exh. I.*

On May 28, 2008, Farrell submitted to psychological assessments at West Jefferson Medical Center after failing a drug screen. In the group progress notes for May 28, 2008, Farrell's records indicate, "[c]lient shared that he went tubing and injured himself and it is uncomfortable to sit." *Id. at Exh. J.*

On June 8, 2008, Farrell sought medical care from Ochsner Medical Center's (Main Campus) Emergency Room in New Orleans for back pain. The Initial Nursing Assessment indicates, "[b]ack pain. States hurt back today by lifting weights. Bulging disc. [Complains of] right lower back pain radiating down to right posterior

6.

calf. States 'he was working out with weights and heard a pop'. Incident happened 45 minutes ago." Farrell was given pain medication and a Phenergan injection, and the pain allegedly resolved. *Id. at Exh. K.*

The following day, June 9, 2008, Farrell sought medical care from Ochsner's Emergency Room in Kenner for chronic back pain radiating down his left leg. Farrell "left without being seen." *Id. at Exh. L.* On June 10, 2008, Farrell sought the care of Dr. R.L. Shackleton of the Bone and Joint Clinic in Marrero for low back pain. *Id.* On June 11, 2008, Farrell returned to Ochsner's Emergency Room for back pain and thick blood in his urine. He was injected with Toradol for pain relief and instructed to avoid heavy lifting. *Id. at Exh. K.* On the same date, Dr. Shackleton scheduled a lumbar epidural steroid injection with Southern Pain and Anesthesia, and diagnosed Farrell with degenerative disk disease. *Id. at Exh. L.*

On June 18, 2008, Farrell returned to the Ochsner (Main Campus) Emergency Room in New Orleans for pain in his back after being involved in a motor vehicle accident. The Ochsner Medical Records provide, "[Patient] states that a couple of weeks ago he was bending over to pick up a pipe and felt like something popped in the left side of his lower back. States this AM was an unrestrained passenger whose car was struck from behind, states that now his lower back hurts even more after that." Farrell also stated that he had numbness and tingling feelings in his left leg, and down to his foot. He was administered Decadron, advised not to lift, prescribed Valium, and discharged. *Id. at Exh. K.*

That same day, June 18, 2008, Farrell sought medical care from East Jefferson General Hospital for back pain that was allegedly induced by lifting weights. His DISCHARGE DIAGNOSIS indicates a musculoskeletal back pain/strain with possible sciatica. He was giving a Toradol injection. The Emergency Room physician recommended Flexeril, Naproxen, hydrocodone and wet heat and that Farrell see an orthopedic specialist for follow up care. *Id. at Exh. N.*

On June 19, 2008, Farrell returned to Ochsner Medical Center in Kenner complaining of back pain. Farrell indicated the pain level was "10/10" which started after he picked up weights at the gym. The treating physician's examination revealed lower back pain radiating down his left leg, and diagnosed his condition as Acute Myofascial Strain. He was given a Toradol injection, prescribed Ultracet and Norflex, and advised to bed rest and follow up with an orthopedic. *Id. at Exh. L.*

On April 13, 2009, Farrell sought medical care from the East Jefferson General Hospital Emergency Room after a taxi cab allegedly ran over his foot. Farrell's admission records indicate, "26 y/o states that 2 days ago a car tire ran over his distal right foot. He then hit the vehicle with his hand. He complains of pain at the base of his great toe and the PIP joint of the finger. He was diagnosed with a fractured finger and contused toe. *Id. at Exh. N.*

On September 4, 2009, Farrell again sought care from the East Jefferson General Hospital Emergency Room after hurting his neck and back while changing a tire. The nurse's notes indicate, "27 y/o apparently had a flat tire this morning and while pulling the tire around and fixing his car had significant onset of back pain, left

neck, all the way down to lower back which apparently caused him to almost pass out and fall over. [Patient] said he had increased pain with any movement, which is relatively excruciating at this point." The treating physician indicated a CLINICAL IMPRESSION of Lumbosacral strain with lumbar radiculopathy. *Id.*

Farrell was also allegedly involved in an additional motor vehicle accident on June 20, 2010. He was examined by the East Jefferson General Hospital Emergency Room physician, Dr. Terry Creel, after complaining of pain to his lower back radiating to his left leg in addition to neck pain. Farrell was diagnosed with Cervical/Lumbar Strain and was advised to see an orthopedist. *Id.*

Farrell was involved in an additional motor vehicle accident on December 11, 2010 and sought medical care at Ochsner Medical Center's (Main Campus) Emergency Room in New Orleans on December 15, 2010 for foot pain. He was diagnosed with a metatarsal fracture and placed in a short leg splint, prescribed Hydrocodone-Acetaminophen and discharged. *Id. at Exh. K.* Farrell returned to Ochsner's (Main Campus) Emergency Room on December 19, 2010 after twisting his foot, and was given Oxycodone. *Id.*

On February 3, 2011, Farrell returned to the Bone & Joint Clinic in Marrero complaining of pain in his right foot. Farrell stated that he was playing football and "rolled" his right foot with an audible pop causing an immediate onset of pain. He was diagnosed with a fifth metatarsal Jones fracture and told to continue his Vicodin. *Id. at Exh. H.* On February 7, 2011, Dr. Scott Habetz performed a procedure to correct the right fifth metatarsal fracture. *Id. at Exh. O.* Farrell was examined by Dr.

9.

Ronald Segura at the Bone & Joint Pain Management Clinic on March 17, 2011 for pain associated with his foot, ankle, and toe. He was prescribed Lortab for pain. *Id. at Exh. P.*

Based on the foregoing, OSSA contends that the elements of *McCorpen* are satisfied in that: (1) plaintiff intentionally concealed information regarding his prior injuries/accidents; (2) the fact that plaintiff had previously sustained injuries to his back, neck and ribs, and that he was previously involved in several automobile accidents was material to OSSA's decision to hire plaintiff, and; (3) plaintiff's pre-accident condition and post-accident allegations regarding his back can be causally connected.

Farrell objects to the medical records outlined above in that they "are not certified"; are not complete copies of medical charts; and do not address any causal relation between Farrell's pre-accident treatment for isolated events and the lower back injury" at issue. Citing the medical records to which he objects, Farrell argues that the documents "reveal genuine issues of material fact regarding whether any causal link exists between any pre-existing disability that was concealed and the disability suffered in the instant accident." *R. 15.*

Rule 56 of the Federal Rules of Civil Procedure provides that the party moving for summary judgment must show that there is no genuine dispute as to any material fact by, "citing to particular parts of materials in the record, including depositions, documents ... or other materials." *FRCP 56(c)(1)(A).* The opposing party "may object that the material cited ... cannot be presented in a form that would be

admissible in evidence." *FRCP 56(c)(2)*. OSSA represents in its reply memorandum that it has received and is in the process of receiving certifications for the medical records submitted in its motion which render them capable of being offered at trial in an admissible form. Based on OSSA's representations and because Rule 56(c) "does not mean that evidence must be submitted 'in a form that would be admissible at trial,'" but rather must <u>be capable</u> of being offered at trial in an admissible form, the Court will consider the medical records in determining the motion for summary judgment. *See, Trevizo v. Adams* 455 F.3d 1155, 1160 (10th Cir. 2006)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

<u>Whether or Not the McCorpen Defense Applies</u>

As to the first *McCorpen* factor, OSSA submits that plaintiff intentionally concealed his prior medical history and his prior medical conditions when he failed to disclose numerous injuries and health problems, including that he had been involved in work related injuries in 2006 and 2008, that he sustained multiple lumbar injuries and suffered pain in both work-related accidents as well as in later automobile accidents and that he had been treated by various physicians, psychiatrists and pain management specialists.

Farrell's medical history was solicited by OSSA through a questionnaire. Thus, the issue for the Court is whether Farrell "was guilty of the kind of intentional concealment of a disabling illness that precludes an award of maintenance." *McCorpen*, 396 F.2d at 549. As provided in the foregoing, intentional concealment under *McCorpen* is an objective interpretation. The record is replete with evidence

that Farrell suffered from accidents and injuries requiring medical attention, sometimes surgery, and was given numerous prescriptions for a variety of pain medications in the years prior to his employment with OSSA. *R. 10, Exh. D.*

Farrell alleges he sustained injury to his "left leg, hip and low back," *12-cv-1866 Complaint*, and, as provided in the September 1, 2011 letter to OSSA, Farrell's attorney submits that he is entitled to "maintenance and cure for injuries allegedly sustained to his lower and mid back, left knee, right foot and hands." *R. 1, ¶ IX.* The medical records indicate Farrell suffered with past instances of left leg pain, right foot pain, finger and elbow pain from various injuries which resulted in surgery in some cases. He has a long standing record of back pain issues, some severe enough to require extensive treatment. Farrell knew he had bulging and protruding discs at L3-4, L4-5 and L5-S1 from an MRI performed in 2008. In completing a form that was obviously designed to elicit information about past illnesses of importance, Farrell failed to reveal any of these medical conditions. Thus, OSSA has established as a matter of law that Farrell intentionally concealed his prior injuries.

With regard to the second *McCorpen* factor, OSSA submits the affidavit of Jeffrey Willis, general manager of OSSA since June 2009, who attests that had OSSA known of Farrell's medical history he could not have hired Farrell and placed him for work aboard the Seahawk 3000:

> [Since Farrell's pre-employment medical history indicates he was unfit for duty pursuant to OSSA's standards. The information misrepresented and/or concealed by Farrell, including the fact that he had sustained various significant injuries to his lower and mid back, hip, knee, neck, foot, and hand, was particularly material to OSSA's decision to hire Farrell and place him for work offshore.

12.

*R. 10-9, Exh. Q, ¶¶ 5 & 6.*

Past instances of back injury, some severe enough to require extensive treatment, are certainly facts material to OSSA's decision to hire Farrell as an offshore worker. As the medical inquiry on the Questionnaire was rationally related to Farrell's physical ability to perform his job duties, OSSA has established that the non-disclosed facts were material to its decision to hire Farrell.

As to the third factor requiring a connection between the withheld information and injury complained of, OSSA cites Farrell's Complaint alleging that he "is [in] need of a lumbar surgery." *R. 10, Exh. B.* Farrell's post-incident medical records from his examination by Dr. Silva indicate, "[Farrell] [comes in for evaluation of back injury ... is complaining of pain on the left side of his lower back." *Id. at Exh. R.* Dr. Silva's assessment of Farrell's condition was "Acute lumbosacral strain and spasm." Farrell's medical records from Dr. Segura on or about April 18, 2011 provide that he was complaining of injuries to his left knee, hip, right foot, and complained of back/lumbar pain in the lower and mid regions, in addition to numbness on the left side of his body. The MRI conducted on July 20, 2011 revealed disc bulging at L3-4, L4-5 and L5-S1. As the injuries Farrell allegedly suffered are virtually identical to his non-disclosed injuries, the Court concludes that it must apply the *McCorpen* rule to bar Farrell's recovery of maintenance and cure. *Brown*, 410 F.3d at 176. *See also, Waterford v. Nabobs Offshore Corp.*, 2004 WL 414948 (W.D.La. March 3, 2004), ("[where plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear."); *Fox v. Plaque*

13.

*mines Parish* Gov't,1999 WL 1243065, \*\*2-3 (W.D.LA. Dec. 17, 1999) (granting summary judgment against claimant on maintenance and cure claim, when defendant showed that the claimant's prior and present back problems both involved lower back injuries involving the L5-S1 disc).

*Conclusion*

In conclusion, OSSA has established the *McCorpen* defense by demonstrating Farrell's intent to conceal his medical condition, that the nondisclosed facts were material to its decision to hire Farrell, and that a connection existed between the withheld information and the injury complained of in the lawsuit. Accordingly, OSSA is relieved from its obligation to provide Farrell maintenance and cure.

_____
Richard T. Haik, Sr.
United States District Judge.

14.